# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TRUE BELIEVERS INK 2, CORP. § | |
| § | |
| *Plaintiff/Counterclaim-Defendant*, § | Civil Action No. 4:18-CV-00432 |
| v. § | Judge Mazzant |
| § | |
| RUSSELL BRANDS, LLC. § | |
| § | |
| *Defendants/Counterclaim-Plaintiff* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #43) and Plaintiff and Defendants' Joint Notice and Joint Motion for Leave to Submit Supplemental Briefing Regarding Russell's Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #95). Having considered the motions and the relevant pleadings, the Court holds that Plaintiff and Defendants' Joint Notice and Joint Motion for Leave to Submit Supplemental Briefing Regarding Russell's Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #95) is **DENIED** and Defendants' Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #43) is **GRANTED**.

### BACKGROUND

True Believers Ink 2, Corp. ("True Believers") filed this trademark infringement action against Russell Brands, LLC ("Russell") for allegedly improper use of the phrase "TRUE BELIEVERS" on June 18, 2018 (Dkt. #1). True Believers alleges: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); (3) trademark infringement under Texas common law; (4) unfair competition under Texas common law; and (5) dilution under the Texas Anti-Dilution Act, TEX. BUS. & COMM. CODE. § 16.103 (Dkt. #1).

On July 16, 2018, Russell filed its Answer, Affirmative Defenses, and Counterclaims (Dkt. #6). Russell asserted three counterclaims against True Believers: (1) Federal Trademark Infringement and Unfair Competition in Violation of 15 U.S.C. § 1125(a); (2) Declaratory Judgment (seeking a declaration that Russell has not infringed, diluted, or engaged in unfair competition with respect to the marks asserted in True Believers' Complaint); and (3) Cancellation of the '115 Registration (alleging that True Believers has abandoned this trademark) (Dkt. #6).

Russell now moves to voluntarily dismiss its three counterclaims under Federal Rule of Civil Procedure 41(a)(2) (Dkt. #43). Citing the termination of its "#TrueBelievers" advertising campaign, Russell asserts that its counterclaims now have "little value" (Dkt. #43). True Believers opposes dismissal of Russell's counterclaims asserting that Russell made judicial admissions in its Answer, Affirmative Defenses, and Counterclaims (Dkt. #46). Accordingly, True Believers claims that the dismissal of these alleged judicial admissions would be legally prejudicial to their action (Dkt. #46). In its Reply, Russell counters that True Believers' characterization of its pleadings is inaccurate as Russell has made no judicial admissions (Dkt. #47). Thus, Russell contends that True Believers will suffer no legal prejudice should the Court dismiss Russell's counterclaims (Dkt. #47).

The Court heard both parties regarding Russell's counterclaims on August 1, 2019 at the Final Pretrial Conference. After the parties were unable to resolve the matter amongst themselves at the Conference, the Court granted the parties an additional week to attempt to reach an agreement (Dkt. #100). On August 8, 2019, True Believers and Russell petitioned the Court again stating that they were still at an impasse. Consequently, the parties filed a Joint Notice and Joint Motion for Leave to Submit Supplemental Briefing Regarding Russell's

Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #95). The Court concludes that no additional briefing is necessary and now considers Russell's Motion to Voluntarily Dismiss Counterclaims Without Prejudice.

**LEGAL STANDARD**

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2); *accord Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 n.2 (5th Cir. 2002); *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 198–99 (5th Cir. 1991). The same rule extends to the dismissal of counterclaims. *See* FED. R. CIV. P. 41(c)(2). The primary purpose of Rule 41(a)(2) is to "prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990) (citing 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2364, at 165 (1971)). When determining whether to dismiss a counterclaim, the Fifth Circuit has held that "[t]he decision to dismiss an action rests within the sound discretion of the trial court and may only be reversed for an abuse of that discretion." *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985) (citing *La-Tex Supply Co. v. Fruehauf Trailer Division*, 444 F.2d 1366, 1368 (5th Cir. 1971); *see United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (citation omitted); *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1274–75 (5th Cir. 1990) (citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976)). Generally, a motion for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the possibility of a second lawsuit. *See Doe,* 343 F.3d at 330 (citing *Elbaor*, 279 F.3d at 317); *Davis*, 936 F.2d at 199; *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 177 (5th Cir. 1990). Moreover, "[i]t is not a bar to dismissal that [the moving party] may obtain

3

some tactical advantage thereby." *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990) (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2364, at 165 (1971)). If the Court finds that legal prejudice does not exist, then the motion should be granted. *See Elbaor*, 279 F.3d at 317. If, however, the Court finds that the motion will cause legal prejudice, then the Court may deny the motion or impose conditions that will cure the prejudice. *Id.* at 317–18.

## ANALYSIS

True Believers asserts that Russell's Answer, Affirmative Defenses, and First Amended Counterclaims (Dkt. #16) contain judicial admissions (Dkt. #46). Citing its intent to "utilize the judicial admissions at trial to simplify and streamline the presentation of evidence to the jury," True Believers claims that it would be "highly [prejudicial], both legally and practically, if Russell were permitted to dismiss its counterclaims at this late date . . ." (Dkt. #46). Russell, however, denies that any judicial admissions were made (Dkt. #43). Consequently, Russell asserts that there would be no legal prejudice to True Believers if the Court were to grant Russell's Motion to Voluntarily Dismiss Without Prejudice (Dkt. #43). To determine whether Russell's counterclaims should be dismissed, the Court must first determine whether Russell's Answer, Affirmative Defenses, and First Amended Counterclaims contain judicial admissions. The Court will then turn to whether True Believers would be legally prejudiced by a dismissal of the counterclaims.

### I. Judicial Admissions

A judicial admission is "a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). By withdrawing a fact from contention, a judicial

4

admission "acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission." *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 7636118, at *5 (E.D. Tex. June 21, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968)).

To qualify as a judicial admission, the Fifth Circuit has held that a statement must be: "(1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (citing *Griffin v. Superior Ins. Co.*, 161 Tex. 195, 338 S.W.2d 415, 419 (1960)). While it is true that "factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them," that is not always the case. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). Indeed, courts have generally recognized that pleadings made in the alternative do not constitute a judicial admission. *See, e.g.*, *Cont'l Ins. Co. of New York v. Sherman*, 439 F.2d 1294 (5th Cir. 1971) (holding that "there is ample authority that one of two inconsistent pleas cannot be used as evidence in the trial of the other.") (citing *Giannone v. United States Steel Corporation*, 238 F.2d 544, n. 4 (3rd Cir. 1956); *McCormick on Evidence*, § 242 at 509–510 (1954)); *Wells Fargo Bank, N.A. v. Guevara*, 2010 WL 5824040, at *3 (N.D. Tex. 2010) ( "[Plaintiff] may not use allegations related to one claim as evidence to invalidate an alternative claim.") (citation omitted); *Boulle, Ltd. v. De Boulle Diamond & Jewelry, Inc.*, 2014 WL 4261994, at *7 (N.D. Tex. Aug. 29, 2014) ("Defendant should not be able to use *Plaintiff's* trademark infringement claims as an admission to *Defendant's* trademark infringement claim. Therefore, Plaintiffs' statements in the Amended Complaint and in the Joint Pretrial Order are not binding judicial admissions, given

5

the inconsistent statements Plaintiffs provide in their answers."). To be sure, where a party's pleadings are inconsistent—e.g., pled in the alternative—any "admission" cannot be unequivocal. *See Gabarick v. Laurin Mar. (Am.), Inc.*, 406 Fed. Appx. 883, 889 (5th Cir. 2010) (quoting *Sherman*, 439 F.2d at 1298).

Here, True Believers alleges that Russell's First Amended Counterclaim contains statements that constitute judicial admissions. Citing paragraphs 9–13, 15–18, 20–22, 52–56, and 60–63 of Russell's First Amended Counterclaim, True Believers contends that Russell has admitted: (1) that it used "TRUE BELIEVERS" as a mark; (2) that the parties' "respective use" of the mark is likely to cause confusion; (3) that it is using the mark "in connection with services that are identical to the services" True Believers offers; and (4) that "the parties use 'TRUE BELIEVERS' in the same channels of trade" (Dkt. #46). Contrary to True Believers' assertions, however, Russell's statements cannot be characterized as judicial admissions. First, it is clear to the Court that several of the disputed statements merely contain general information about Russell, such as the brand names that Russel sells merchandise under, the history of Russell, and Russell's ownership of the "SPALDING" and "TRUE TO THE GAME" trademarks. It is readily apparent that these statements are not "contrary to a fact essential to the theory of recovery;" therefore, the Court finds that paragraphs 9–13, 15, and 16 do not qualify as judicial statements. *Heritage Bank,* 250 F.3d at 329 (citation omitted). Paragraphs 16, 17, 18, 20, and 22 appear to detail Russell's advertisement campaign revolving around the phrase "True Believers." These statements fail to contradict a fact that is essential to the theory of recovery because Russell has already admitted in its answer that it used the phrase "True Believers" and the hashtag "#TrueBelievers" for its "national and international advertising and social mediate campaign" beginning in 2016 (Dkt. #16 at p.2). Accordingly, these statements also fail to qualify as judicial admissions.

6

As for the remaining paragraphs, paragraphs 53–56 and 60–63 contain the following statements:

> 53. Counterclaim-Defendants' subsequent adoption and use of the identical TRUE BELIEVERS and #TRUEBELIEVERS designations is likely to cause confusion with Russell's prior TRUE BELIEVERS marks because they are confusingly similar in sight, sound, and overall commercial impression to Russell's TRUE BELIEVERS Marks.
> 54. The services Counterclaim-Defendants purport to offer under the TRUE BELIEVERS mark, namely, "providing consumer product information via the Internet," are identical and/or substantially similar to the services that Russell has offered under its TRUE BELIEVERS Marks since long before TBI's application to register or Counterclaim-Defendants' use of the TRUE BELIEVERS mark in connection with such services.
> 55. Counterclaim-Defendants' December 2017 use of TRUE BELIEVERS in connection with sponsorship of sporting events, apparel, and accessories encroaches on the channels of trade and customers with which Russell has used its TRUE BELIEVERS mark since February 2016, and therefore infringes Russell's common law rights in its TRUE BELIEVERS Mark.
> 56. Counterclaim-Defendants' goods bearing the TRUE BELIEVERS Mark are advertised and sold through the same trade channels as Russell's TRUE BELIEVERS goods and services, namely the Internet and social media.
> 60. Counterclaim-Defendants' adoption and unauthorized use in commerce of a mark identical to the TRUE BELIEVERS and #TRUEBELIEVERS marks in which Russell has prior rights, as alleged herein, is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection, or association of Counterclaim-Defendants' goods and services, and is likely to cause consumers to mistakenly believe that TBI's goods and services have been authorized, sponsored, approved, endorsed, or licensed by Russell, or that Counterclaim-Defendants are in some way affiliated with Russell or the goods and services that Russell offers under its marks.
> 61. Counterclaim-Defendants' acts, alleged herein, constitute infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
> 62. By reason of Counterclaim-Defendants' actions, Russell has suffered irreparable harm to its valuable trademarks and service marks and the goodwill associated therewith. Russell has been and, unless Counterclaim-Defendants are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed.
> 63. As a direct and proximate result of Counterclaim-Defendants' conduct, Russell has suffered and will continue to suffer damages in an amount to be proved at trial.

(Dkt. #16 at p. 30–32). Russell argues that these statements were pled in the alternative; therefore, they do not qualify as judicial admissions. While Russell did not clearly indicate that it was pleading in the alternative, it is unnecessary to do so. *See Boulle, Ltd.*, 2014 WL 4261994, at *6–7 (citing *Brandt Indus., Ltd. v. Pitonyak Mach. Corp.*, 2012 WL 4357447, at *3 (S.D. Ind. Sept. 24, 2012) ("[M]agic words are not required to take advantage of utilizing Rule 8 of the Federal Rules of Civil Procedure, which specifically authorizes alternative, hypothetical and or inconsistent pleading."). It is apparent to the Court that Russell entered these inconsistent pleas regarding the issues of likelihood of confusion and harm as part of an alternative plea. Because these statements are necessarily in the alternative, they simply cannot be unequivocal. *See Gabarick*, 406 Fed. Appx. at 889. Indeed, all one needs to do to reach this conclusion is compare Russell's Answer with its First Amended Counterclaim to find that the two are inconsistent. For instance, in its Answer, Russell specifically denies True Believers claim that "Russell's widespread use of the Infringing Mark is likely to cause reverse confusion" (Dkt. #16 at p. 13). Yet, in its First Amended Counterclaim, Russell states that the same use of the Mark is "likely to cause confusion" (Dkt. #16 at p. 30). Further, Russell denies in its Answer that it used the Mark to cause prospective consumers "to falsely believe that Russell's "True Believers" goods and services come from the same source as TBI's goods and services" (Dkt. #16 at p. 13). In its Counterclaim, however, Russell inconsistently alleges that the same use of the Mark "is likely to cause consumers to mistakenly believe that TBI's goods and services have been authorized, sponsored, approved, endorsed, or licensed by Russell" (Dkt. #16 at p. 31). To put it simply, it is not necessary to make an inferential leap to determine that Russell has pled in the alternative and thus has not met *Heritage Bank's* "deliberate, clear, and unequivocal" standard. 250 F.3d at 329. Thus, the Court finds that these alternative pleadings are not judicial admissions.

## II. Legal Prejudice Under Rule 41(a)(2)

"'Courts have generally followed the traditional principle that dismissal should be allowed unless the [non-moving party] will suffer some plain legal prejudice other than the mere prospect of a second lawsuit . . . .'" *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990) (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2363, at 165 (1971)). Thus, when evaluating a motion for voluntary dismissal, the Court should first take into consideration whether an unconditional dismissal will cause the non-movant to suffer legal prejudice. *Elbaor*, 279 F.3d at 317–18. When determining whether a defendant will suffer legal prejudice from a voluntary dismissal under Rule 41(a)(2), "[t]he Court may look to several nonexclusive factors." *Hereford v. Carlton*, 9:15-CV-26, 2016 WL 7042230, at *8 (E.D. Tex. Mar. 16, 2016) (citation omitted). Those nonexclusive factors include:

> (1) the defendant's effort and the expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the defendant

*Elbaor*, 279 F.3d at 317 n.3 (citation omitted); *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 974 (5th Cir. 1993); *Colon Cabrera v. Esso Std. Oil Co. (P.R.), Inc.*, 723 F.3d 82, 88 (1st Cir. 2013); *Hyde v. Hoffman-La Roche*, 511 F.3d 506, 509 (5th Cir. 2007); *Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 985, 987 (5th Cir. 2007); *Manshack v. Southwestern Elec. Power Co.*, 915 F.2d 172, 174-175 (5th Cir. 1990). The Court may also consider "whether the defendant will lose substantive legal rights, *e.g.*, loss of defenses; and whether the dismissal is sought only to avoid an adverse decision or to seek a more favorable forum." *Unida*, 986 F.2d at 974. Further, "'[w]hen a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted

significant time and effort, [] a court may, in its discretion, refuse to grant a voluntary dismissal.'" *Doe*, 343 F.3d at 330 (quoting *Davis*, 936 F.2d at 199). Conversely, it is not sufficient legal prejudice to show that the non-moving party "may lose some perceived tactical advantage." *Manshack*, 915 F.2d at 174. If the Court finds that legal prejudice does not exist, the motion should be granted. *See Elbaor*, 279 F.3d at 317. If, however, the Court finds that the motion will cause legal prejudice, then the Court may deny the motion or impose conditions that will cure the prejudice. *See id.* at 317–18.

Here, True Believers claims that it will suffer legal prejudice "because [it] would be deprived of the conclusive nature of the judicial admissions contained in the counterclaims" (Dkt. #46 at p. 7). Specifically, True Believers asserts that Russell has admitted that its use of the Mark has created a likelihood of confusion; an admission that True Believers requires to prevail on a claim of federal trademark infringement under the Lanham Act. *See Alliance for Good Government v. Coalition for Better Government*, 901 F.3d 498, 505 (5th Cir. 2018) ("To prevail on a claim of federal trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, a plaintiff must show (1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark."). Further, True Believers alleges that the motion to dismiss is a tactical move by Russell to support Russell's Motion for Partial Summary Judgment (Dkt. #35). Russell, however, argues that dismissal would be proper, since there are no judicial admissions within its counterclaims (Dkt. #47).

As was previously determined, the statements that True Believers points to do not qualify as judicial admissions. Any difficulty that True Believers has in relation to establishing the necessary elements of their claim is solely the result of their erroneous belief that Russell's statements constituted judicial admissions. The mere fact that Russell might receive a tactical

10

advantage in relation to its Motion for Partial Summary Judgment—or at trial by requiring True Believers to affirmatively prove confusion —is not a sufficient basis to find that True Believers would suffer legal prejudice. *Manshack*, 915 F.2d at 174. Moreover, regardless of any "tactical advantage" to be gained by Russell at trial, True Believer's argument regarding Russell's Motion for Partial Summary Judgment is moot as the Court has since denied Russell's motion (Dkt. #88).

While it is true that Russell moved to dismiss its counterclaims nearly a year into the case, the withdrawal of counterclaims at a "late date" does not constitute prejudice *per se*. *Elbaor*, 279 F.3d at 317 n.3 (citation omitted). True Believers will not lose any claims or defenses against Russell, *Hyde*, 511 F.3d at 509, no statute of limitations will be lost, *Manshack*, 915 F.2d at 174, and no forum change will result, *Phillips*, 874 F.2d at 987. All that will occur, should Russell's counterclaims be dismissed, is a potentially "longer" and "more complicated" trial" (Dkt. #46 at p. 8–9). But this longer trial is not the result of gamesmanship by Russell. Rather, it is the trial that True Believers requested when they filed this action under the Lanham Act; a trial where True Believers must carry its statutory burden to prove the infringement it alleges. Simply because True Believers was mistaken in their interpretation of what constitutes a "judicial admission" does not mean that True Believers may now claim prejudice and receive a lesser burden than what is statutorily required. Thus, no substantial rights of True Believers will be prejudiced if the counterclaims are dismissed. True Believers will merely have to do the heavy lifting itself instead of relying on alleged "judicial admissions"—a burden the Lanham Act places on plaintiffs by default. Additionally, while the timing of Russell's motion is a fact the Court must consider, the mere fact that Russell seeks to dispose of its counterclaims now, instead of two or three months into litigation, does not persuade the Court that legal prejudice will result.

Finally, True Believers has not alleged that dismissal would be improper on the basis of the four factors provided for within *Elbaor*. Consequently, the Court finds that these arguments have been waived. Accordingly, the Court finds that True Believers will not suffer plain legal prejudice should the Court dismiss Russell's counterclaims.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff and Defendants' Joint Notice and Joint Motion for Leave to Submit Supplemental Briefing Regarding Russell's Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #95) is **DENIED** and Defendants' Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #43) is **GRANTED**.

**SIGNED this 27th day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE