# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TRUE BELIEVERS INK 2, CORP. | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No.  4:18-CV-00432 |
| | § | |
| v. | § | Judge Mazzant |
| | § | |
| RUSSELL BRANDS, LLC. | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Motion for New Trial (Dkt. #136) and Defendant Russell Brands, LLC's Motion for Award of Attorneys' Fees (Dkt. #134).  Having considered the motions and the relevant pleadings, the Court finds that Plaintiff's Motion is **DENIED** and Defendant's Motion is **DENIED**.

## BACKGROUND

On June 18, 2018, True Believers Ink 2, Corp. ("True Believers") filed this trademark infringement action against Russell Brands, LLC ("Russell") (Dkt. #1).  True Believers asserted that Russell deliberately infringed True Believers' alleged trademarks which consisted of: (1) a TRUE BELIEVERS Cross, (2) a TRUE BELIEVERS Phrase; and (3) a TRUE BELIEVERS Circle (Dkt. #1).  The alleged infringement was said to have commenced in February of 2016 (Dkt. #1).  Consequently, True Believers brought the present action alleging: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); (3) trademark infringement under Texas common law; (4) unfair competition under Texas common law; and (5) dilution under the Texas Anti-Dilution Act, TEX. BUS. & COMM. CODE § 16.103 (Dkt. #1).

On July 16, 2018, Russell filed its Answer, Affirmative Defenses, and Counterclaims (Dkt. #6).  Russell asserted three counterclaims against True Believers: (1) Federal Trademark Infringement and Unfair Competition in Violation of 15 U.S.C. § 1125(a); (2) Declaratory Judgment (seeking a declaration that Russell has not infringed, diluted, or engaged in unfair competition with respect to the marks asserted in True Believers' Complaint); and (3) Cancellation of the '115 Registration (alleging that True Believers has abandoned this trademark) (Dkt. #6).  On June 6, 2019, Russell filed Russell Brands, LLC's Motion to Voluntarily Dismiss Counterclaims Without Prejudice (Dkt. #43).

On August 1, 2019, the Court held its Final Pretrial Conference (Dkt. #89).  At the Final Pretrial Conference, the Court heard argument regarding Russell's Motion to Voluntarily Dismiss Counterclaims Without Prejudice.  The Court also heard argument on each party's Motion *in Limine* (Dkt. #89).  True Believers' Motion *in Limine* contained multiple matters.  Matter No. 9 ("MIL No. 9") requested that the Court exclude:

> Any evidence, question, statement, reference, or suggestion regarding arrests or criminal history of any person.  During the depositions of Mr. Peoples and Mrs. Peoples, counsel for Russell asked each of them whether they had ever been accused of, arrested for, charged with, or convicted of any crime.  Such evidence is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

(Dkt. #50).  The Court granted MIL No. 9 (Dkt. #90).  Matter No. 11 ("MIL No. 11") requested that the Court exclude:

> Any evidence, question, statement, reference, or suggestion that any person has declared bankruptcy.  During the depositions of Mr. Peoples and Mrs. Peoples, counsel for Russell asked them whether they had ever declared bankruptcy.  Such evidence is irrelevant in this lawsuit, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, and it constitutes inadmissible character evidence. FED. R. EVID. 402, 403, 404 & 405.

(Dkt. #50).  The Court also granted MIL No. 11 (Dkt. #90).  In granting MIL Nos. 9 and 11, the Court stated that the Court's decision was not a final ruling on whether any such information "should come in or not"; rather, the Court instructed the parties to "approach the bench before you get into anything like this with a witness" (Dkt. #138, Exhibit 2).  The Court reiterated what it meant when granting any matters in the Court's Order on Plaintiff's Motion *in Limine* by stating:

> With respect to the matters marked "GRANTED" below, counsel and witnesses shall not make any mention or interrogation, directly or indirectly, in any manner concerning the matters set forth without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all the prospective jurors and jurors ultimately selected in the case.

(Dkt. #90).  Furthermore, the Court stated, after indicating that MIL No. 9 and MIL No. 11 were "Granted," that: "Parties should approach the bench" (Dkt. #90).

On August 27, 2019, the Court entered its Order dismissing Russell's counterclaims without prejudice (Dkt. #103).  The Court then proceeded to a trial on the merits beginning on September 9, 2019 (Dkt. #112).  On September 13, 2019, the Court submitted the case to the jury for deliberations.  After three hours of deliberations, the jury returned a take-nothing verdict finding that True Believers had not established any of the submitted claims (Dkt. 127).  The Court is now presented with two post-trial motions.

First, on October 3, 2019, Russell filed Defendant Russell Brands, LLC's Motion for Award of Attorneys' Fees (Dkt. #134).  Russell asserts that it is entitled to attorneys' fees against True Believers because True Believers: (1) brought a substantively weak action; and (2) litigated in an unreasonable manner (Dkt. #134).  Russell also asserts that it is entitled to attorneys' fees against True Believers' lead counsel, Mr. Steven E. Ross ("Mr. Ross"), because Mr. Ross allegedly: (1) maintained a substantively weak action on behalf of True Believers; and (2) engaged in "unreasonable and vexatious litigation misconduct" (Dkt. #134).  On October 17, 2019, True Believers filed Plaintiff's Response in Opposition to Defendant's Motion for Award of

Attorney[s'] Fees (Dkt. 135).  True Believers asserts that Russell's Motion should be denied in all respects.  On October 24, 2019, True Believers filed its Reply in Support of Motion for Award of Attorneys' Fees (Dkt. #137).

The second post-trial motion is Plaintiff's Motion for New Trial (Dkt. #136).  True Believers filed the Motion on October 18, 2019.  True Believers asserts two arguments for a new trial.  First, True Believers argues that the Court submitted a legally erroneous jury instruction to the jury that conflicted with the definition of "use in commerce" in Section 45 of the Lanham Act, 15 U.S.C. § 1127 (Dkt. #136).  Second, True Believers claims that during E. Leon Carter's ("Mr. Carter") cross examination of True Believers' owner and president, Gregory Shon Peoples (Mr. Peoples), Mr. Carter, counsel for Russell: (1) accused Mr. Peoples of perjury; (2) violated the Court's Order on MIL No. 9; (3) prejudiced the jury; and (4) consequently affected the verdict (Dkt. #136).  On November 11, 2019, Russell filed Defendant Russell Brands, LLC's Opposition to Plaintiff's Motion for a New Trial (Dkt. #138).  Russell counters that: (1) the Court's jury instruction was not erroneous; and (2) True Believers failed to preserve error during Mr. Carter's cross, Mr. Carter complied with the Court's Order on MIL No. 9, and True Believers did not establish any prejudice from Mr. Carter's use of the term "perjury" (Dkt. #138).  On November 8, 2019, True Believers filed Plaintiff's Reply in Support of its Motion for New Trial (Dkt. #139).

## LEGAL STANDARD

*Motion for New Trial*

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  FED. R. CIV. P. 59(a).  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages

awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).  However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party— is grounds for granting a new trial . . . .  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  FED. R. CIV. P. 61.

To be entitled to a new trial, Plaintiff must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence.  *Taylor v. Seton Healthcare*, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing *Dresser–Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)).  A jury verdict is entitled to great deference.  *Dresser–Rand Co.*, 671 F.2d at 839.  "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict."  *Gibraltar Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir.1988).

*Attorneys' Fees*

"Under the 'bedrock principle known as the 'American Rule,' '[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'"  *Marc v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013).  One such statute is 15 U.S.C. § 1117(a), another such statute is 28 U.S.C. § 1927.

## ANALYSIS

The Court is presented with two post-trial motions.  The Court will address Plaintiff's Motion for New Trial first, then proceed to Defendant Russell Brands, LLC's Motion for Award of Attorneys' Fees.  In both instances, the Court finds that the Motions should be denied.

I.      Plaintiff's Motion for New Trial

True Believers asserts that it is entitled to a new trial because the Court submitted a legally erroneous jury instruction to the jury that conflicted with the definition of "use in commerce" in Section 45 of the Lanham Act, 15 U.S.C. § 1127.  True Believers also argues that it is entitled to a new trial due to the cross examination of Mr. Peoples by Mr. Carter.  The Court, as will be explained, disagrees in both instances.

A.  Jury Instructions

In the Fifth Circuit, two requirements must be met before a new trial will be granted based on an erroneous jury instruction.  First, the movant must demonstrate that: "the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."  *Hatsell v. Doctor Pepper Bottling Co.*, 207 F.3d 269, 272 (5th Cir. 2000).  Second, "even if the instruction was erroneous, the instruction must have affected the outcome of the case." *Id.*

The Court gave the following instructions:

*Ownership of a Trademark*

["First Instruction"] A trademark is "used," in connection with services, for purposes of this instruction, when it is used to advertise **and** sell its services.

---

*Trademark Infringement – Unregistered Trademark*

In order to establish infringement of one or more of TBI's unregistered alleged marks, TBI has the burden of proving each of the following by a preponderance of the evidence:

6

1. ["Second Instruction"] TBI began the use of the alleged TRUE BELIEVERS Phrase and/or TRUE BELIEVERS Circle as a mark, or as marks, for (a) apparel, and/or (b) "providing consumer product information via the internet" services **separate from the sale of its own apparel** in the identified market;

2. Russell began to use the term "True Believers" or "#True Believers" as a trademark in the identified market after TBI began use of that mark;

3. Russell's use of the term "True Believers" or "#True Believers" was without the consent of TBI;

4. One or more of TBI's alleged TRUE BELIEVERS Phrase and TRUE BELIEVERS Circle were valid and protectable marks; and

5. ["Third Instruction"] Russell's use of one or more of the terms "True Believers" or "#True Believers" is likely to cause confusion among ordinary purchasers as to the source, affiliation, or sponsorship of (a) apparel, and/or (b) "providing consumer product information via the internet" services **separate from the parties' sale of their own goods or services**.

If you find that each of the elements on which TBI has the burden of proof has been proved, your verdict should be for TBI on its trademark infringement claim. If, on the other hand, TBI has failed to prove any of these elements, your verdict should be for Russell.

(Dkt. #123) (emphasis added).  True Believers argues that the First, Second, and Third Instructions are erroneous statements of the law because they conflict with the definition of "use in commerce" as set out in Section 45 of the Lanham Act.[1]  The First Instruction, True Believers continues, is erroneous because it employs the conjunction "and" rather than "or" for the terms "advertise" and "sell."  The Second and Third Instructions are erroneous, True Believers goes on, because "nothing in the definition in § 1127 requires a mark to be used to advertise or sell goods or services that are separate and apart from the mark owner's own goods or services" (Dkt. #136).  Russell counters

---

[1] The Lanham Act states, in relevant part, that:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark.  For purposes of this chapter, a mark shall be deemed to be in use in commerce--

> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

that none of the above instructions were erroneous (Dkt. #138). The Court addresses the Second

and Third Instructions first then turns to the First Instruction.

> i.     Second and Third Instructions

According to the Trademark Manual of Examining Procedure, to constitute a service for

Class 35 trademark protection:

> (1) a service must be a real activity; (2) a service must be performed to the order of, or for
> the benefit of, someone other than the applicant; and (3) the activity performed must be
> qualitatively different from anything necessarily done in connection with the sale of the
> applicant's goods or the performance of another service.

TMEP § 1301.01(a) (5th ed. 2007) (citing *In re Canadian Pacific Limited*, 754 F.2d 992, 224

USPQ 971 (Fed. Cir. 1985); *In re Betz Paperchem, Inc.*, 222 USPQ 89 (TTAB 1984); *In re*

*Integrated Res., Inc.*, 218 USPQ 829 (TTAB 1983); *In re Landmark Commc'ns, Inc.*, 204 USPQ

692 (TTAB 1979)). "To be a service, an activity must be primarily for the benefit of someone

other than the applicant. While an advertising agency provides a service when it promotes the

goods or services of its clients, a company that promotes the sale of its own goods or services is

doing so for its own benefit rather than rendering a service for others." 1301.01(a)(ii) (5th ed.

2007) (citing *In re Reichhold Chems., Inc.,* 167 USPQ 376 (TTAB 1970)). "It has become a settled

principle that the rendering of a service which is normally 'expected or routine' in connection with

the sale of one's own goods is not a registrable service . . . ." *In re Dr. Pepper Co.*, 836 F.2d 508,

509 (Fed. Cir. 1987). Finally, a valid service must be "sufficiently separate from an applicant's

principal activity to constitute a service . . . ." TMEP § 1301.01(a)(iii) (5th ed. 2007); *see also*

*Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F. Supp. 2d 726, 740 (N.D. Tex. 2011)

(citing *In re Adver. & Mktg. Dev., Inc.*, 821 F.2d 614 (Fed Cir. 1987)) ("Advertising in [and] of

itself is neither a good nor a service.").

The Court's instruction requiring True Believers to establish services separate from the sale of its own apparel is in keeping with the law.  True Believers provides no persuasive argument to the contrary.  Rather, True Believers merely cites TMEP § 1301.01(a)(i) without considering the other relevant subsections of § 1301 in support of its argument.  The Court has already rejected this argument from True Believers and finds that the Second and Third Instructions were not erroneous.  What is more, True Believers provides no argument, other than a conclusory statement, to establish that, "even if the instruction was erroneous, the instruction must have affected the outcome of the case." *Hatsell*, 207 F.3d at 272.  And, as will be further discussed in Part I(A)(ii), *supra*, even if True Believers had proffered an argument that the Second and Third Instructions must have affected the outcome of the case, True Believers would still not have been entitled to a new trial as the Court would have found to the contrary.  True Believers did not carry its burden as to either *Hatsell* prong.  *See id.*  Consequently, True Believers' Motion for New Trial is denied as to the Second and Third Instructions.

ii.   First Instruction[2]

The First Instruction is a closer call.  But the Court need not decide whether the Court's instruction was erroneous.  Even if the First Instruction was erroneous, True Believers failed to

---

[2] It bears noting the procedural history that led to the First Instruction in the Final Jury Charge ("Charge").  On September 12, 2019, the night before the Charge was to be published to the jury, the Court held an informal charge conference ("Charge Conference").  At the Charge Conference, True Believers asserted, among other things, that the language in the First Instruction should contain the conjunction "and" between "advertise" and "sell" rather than the conjunction "or."  Russell agreed to this language given that the second prong of the Lanham Act—a prong that was not present in the Charge—contains the qualifying phrase "and the services are rendered in commerce."  *See* 15 U.S.C. § 1127.  Consequently, the Court modified the Charge to read "advertise *and* sell services" from the original Charge that stated, "advertise *or* sell services."  After resolving the remaining disputes, the Charge Conference concluded.  In concluding, the parties were instructed that they could formalize their previous objections, on the record, the following morning.  That same evening, at 11:00 p.m., Russell emailed the Court and provided supplemental briefing on several objections it had raised at the Charge Conference.  At 6:43 a.m. the following morning, True Believers responded to those objections.  Notably, among a list of objections that had already been discussed, True Believers raised a new objection to the Charge.  True Believers now asserted that it had been wrong in asking the Court to change the conjunction "or" to "and"; thus, True Believers objected to its own request—a request that both parties had agreed to and thus resolved—for the first time, via email, the morning after the Charge Conference concluded.  The matter

establish that the First Instruction "must have affected the outcome of the case." *Id.*  True Believers provides the Court with no argument or authority to support its position that the Court's instruction must have affected the outcome of the case; rather, True Believers merely argues that the Court's error, if there was one, was "clearly prejudicial."  This insufficient, conclusory argument certainly does not carry True Believers' burden to establish the second prong under *Hatsell*.  *See id.* Nonetheless, in the interest of justice, the Court reviews the second prong of *Hatsell*.  The Court finds that True Believers could not have adequately argued that the Court's instruction—again, assuming, but not deciding, that the Court's instruction was erroneous—affected the outcome of the case because True Believers did not, and could not, establish a likelihood of confusion at trial.

To determine whether a plaintiff has made a showing of likelihood of confusion, the Fifth Circuit has held that a court is to consider the following eight non-exhaustive factors:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, ... (7) any evidence of actual confusion[,]' ... [and] (8) the degree of care exercised by potential purchasers.

*Springboards to Edu., Inc. v. Hous. Indep. School Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017)).  Assuming True Believers could have satisfied the validity and use of the disputed marks, True Believers did not demonstrate that confusion over the marks was likely—i.e., probable, not possible.  Put simply, True Believers failed to proffer evidence that could persuade a reasonable jury to find for True Believers.[3]

---

would not be formally raised to the Court until after the Charge was published to the jury and the jury was dismissed to begin deliberations.

[3] True Believers may aver that Russell's Motion for Judgment as a Matter of Law was denied and thus it is untrue that True Believers could not have prevailed.  While it is true that the Court denied Russell's Motion, Rule 50 uses permissive language in describing the Court's duty under the rule; in other words, Rule 50 does not *require* the Court to grant a Rule 50(a) motion even if that motion could be granted.  *See* Fed. R. Civ. P. 50(a) ("may").  Had the jury returned a verdict favoring True Believers, the Court would have been required to find, upon a proper motion, that there was a "lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." *Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004); FED. R. CIV. P. 50(a).

i.      Type of Mark

The parties previously agreed that the marks here were inherently distinctive.[4]  This is the only factor that True Believers could have established.  Even then, Russell offered substantial evidence at trial demonstrating that numerous third parties used the words "True Believers" on various goods and consumer products.  Consequently, any weight this factor had was greatly diminished by third party usage.  This factor alone would not be enough to establish that there was a likelihood of confusion.

ii.      Similarity Between the Marks

The marks were only similar inasmuch as they both use the words "True Believers."  Any resemblance stops there.  True Believers established at trial that it uses the phrase alongside Christian imagery, quotes, and Bible verses.  Russell established that it used the phrase alongside images of NBA basketball players and its SPALDING mark.  The settings the phrases were used in greatly differed and undoubtedly created a different impression for each consumer that viewed the marks.  As such, any similarity between the marks is lacking as the evidence presented to the jury was simply insufficient.

iii.      Similarity of Products or Services

The products and services sold by True Believers and Russell were not similar.  Russell offered evidence that it only used "True Believers" on a finite portion of clothing and materials that were given for free to attendees of elite, invite-only basketball camps.  True Believers offered evidence that it uses the marks for Christian apparel and argued that it also uses the marks to provide consumer product information over the internet.  These facts simply do not lend

---

[4] The Court employs the past-tense because Russell represented to the Court that it has ceased using the True Believers phrase.

themselves to a reasonable jury finding any likelihood of confusion due to a similarity of products or services.

### iv.     Identity of Retail Outlets and Purchasers

As stated in the third factor, *supra*, Russell did not offer any merchandise with the words "True Believers" on it for sale in the United States.  Consequently, there was no evidence of overlap between retail outlets and purchasers of True Believers and Russell's products.

### v.     Identity of Advertising Media Used

A jury also could not find it likely that a consumer would have been confused because of an overlap in the advertising media used by True Believers and Russell.  True Believers put on evidence that it used its marks online, through vendor fairs, magazines, t-shirts, and the like.  All of True Believers' efforts, True Believers stated at trial, were dedicated toward sharing the company's Christian message.  Russell's use of the phrase, on the other hand, was limited to use in advertising mediums such as catalogues for sporting equipment and invitations to basketball camps.  Russell thus established that the only overlap that occurred through advertising media was that both parties utilized the internet to advertise "True Believers."  In other words, Russell's content focused on basketball while True Believers' content focused on sharing the Christian faith.  Each party offered an entirely different message and brand.  One was worldly, the other spiritual.  Any overlap that occurred would have been merely grounded in both parties' utilization of the internet.  A reasonable jury could not have found, based upon this evidence, that confusion was probable due to the advertising media used.

### vi.     Defendant's Intent

True Believers offered no evidence that could persuade a reasonable jury that Russell intended to benefit from the reputation or goodwill of True Believers.  Rather, the evidence showed

that Russell's advertising agency conducted a trademark search and determined that Russell could utilize the phrase without risk of infringing upon another's trademark.  There simply was no evidence of any bad faith on Russell's part.

vii.    Actual Confusion

Further, True Believers, while not required to, provided no evidence of actual confusion. True Believers called Mr. Raymond Ware ("Mr. Ware") to the stand to attempt to show that Mr. Ware was confused by a graphic on an NBA videogame he had been playing.  In this NBA videogame, a graphic flashed across the scorer's table that showed Russell using the phrase "True Believers."  Mr. Ware testified that while it crossed his mind that the small, north-Texas company True Believers could now be working with Russell, he knew immediately that could not be true, did not give it another thought, and understood that Russell and True Believers were two entirely separate companies that did not compete with one another.  In fact, the only reason Mr. Ware notified Mr. Peoples was because Mr. Peoples told Mr. Ware that he was engaged in some legal issues with Russell.  Mr. Ware's fleeting, and quickly corrected, thought does little to persuade. In fact, Mr. Ware—True Believers only actual confusion witness—so much as admitted that he was not confused, understood immediately that the companies were not associated with one another, and returned to playing his game without another thought.  Once again, True Believers failed to provide adequate evidence to convince a reasonable finder of fact that ordinary purchasers would have been confused by the two marks.

viii.    Degree of Care Exercised by Potential Purchasers

As has been previously addressed, Russell offered no goods or services for purchase that were associated with the phrase "True Believers."  Any Russell products that contained the phrase were free "swag" at Russell's elite, invite-only basketball training camps.  Thus, there simply could

13

not be any potential purchasers of a Russell's "True Believers" product as no such product was sold.  True Believers, on the other hand, marketed its materials toward Christians and provided no evidence that its consumers lacked sophistication.  On the contrary, True Believers put on evidence that some of its customers purchased True Believers' merchandise in bulk.  Further, True Believers argued at trial that its products and services had deep, spiritual meaning.  Accordingly, it would have been unreasonable for the jury to believe that a customer seeking Christian materials in bulk would not exercise care prior to placing a large order.  And, even if the order was not one of the bulk orders that True Believers discussed, the sophisticated meaning behind the products and services that True Believers offers surely evidence that some care would be exercised by its potential purchasers.  In sum, True Believers introduced no persuasive evidence that its products, services, or purchasers were less sophisticated such that potential purchasers would be more likely to be confused by any similarity in Russell's not-for-sale products.

As the factors indicate, True Believers could not convince a reasonable jury that there was a likelihood of confusion due to Russell's use of "True Believers."  Therefore, even if the First Instruction were erroneous, it could not have affected the outcome of the trial.  And, if an analysis of these factors is not convincing enough, a consideration of the jury's verdict should be.  The jury found that True Believers did not demonstrate infringement and a likelihood of confusion in Section 3 of the Verdict Form.  Indeed, despite the Court's First Instruction, the jury still found: "(1) a protectable, valid trademark; and (2) that TBI used it before Russell began to use the TRUE BELIEVERS phrase or variations thereof" in regards to the TRUE BELIEVERS Circle. Dkt. #128.  Notwithstanding this conclusion, the jury found that True Believers failed to establish "by a preponderance of the evidence, that Russell infringed TBI's alleged TRUE BELIEVERS Circle and engaged in unfair competition *in a manner that creates a likelihood of confusion* as to

14

the source, affiliation, or sponsorship of either party's products or services." Dkt. #128 (emphasis added).  Thus, even when True Believers established use, True Believers was still unable to prove infringement or confusion.  While the Court recognizes that Section 1, 2, and 3 of the Verdict Form concern different alleged marks, it is still telling that: (1) the jury was able to find use under the Court's First Instruction; and (2) the jury was unable to find confusion or infringement on an exceedingly similar mark when it reached that question.  Accordingly, even if True Believers had adequately argued its Motion and provided some evidence or argument that the Charge affected the outcome of the case, the Court would disagree.  True Believers' Motion, as to the First, Second, and Third Instructions, is accordingly denied.

### B.  Cross Examination

The Fifth Circuit gives trial judges broad discretion in deciding a motion for new trial based upon violations of their *in limine* orders and they will be overturned only for abuse of discretion. *J.T. Gibbons, Inc. v. Crawford Fitting Company*, 704 F.2d 787, 799 (5th Cir. 1983).  When determining whether a new trial should be granted based on violation of court orders, the trial court is given great deference to "gauge the prejudicial impact" of a party's or their counsel's improper conduct during the trial.  *All Freight Systems v. James*, 115 F. App'x 182, 187 (5th Cir. 2004).  A new trial is warranted on the ground of misconduct during the trial where the misconduct establishes the belief that the jury was influenced by "prejudice in reaching its verdict."  *Id.* (citation omitted).  In other words, if the "improper comments . . . impair substantial rights and cast doubt on the verdict," a new trial is warranted.  *Id.*; *see also Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985) (same).  If the violation of the court's *in limine* order—i.e., improper

questioning of witnesses or argument—prejudices the opposing party's right to a fair trial, a motion for new trial should be granted.  *Id.*

True Believers maintains that it is entitled to a new trial because counsel for Russell, Mr. Carter, accused Mr. Peoples of perjury, violated the Court's Order on MIL No. 9, prejudiced the jury, and thus affected the verdict.  Russell counters that: (1) True Believers failed to preserve error regarding Mr. Carter's cross examination of Mr. Peoples; (2) Mr. Carter complied with the Court's Order on MIL No. 9; and (3) True Believers established no prejudice from Mr. Carter's use of the term "perjury."  For each of the reasons Russell proffers, the Court finds that a new trial is not warranted.

First, True Believers failed to preserve error during Mr. Carter's cross examination of Mr. Peoples.  Federal Rules of Civil Procedure 46 and 51 "require that a party specifically and timely object to the introduction of evidence or to an instruction to the jury, and give specific grounds therefor, in order to preserve such objection for a motion for new trial."  *Meyers v. Moody*, 475 F. Supp. 232, 237 (N.D. Tex. 1979) (citing *Patton v. Archer*, 590 F.2d 1319 (5th Cir. 1979); *Jamison Co. v. Westvaco Corp.*, 526 F.2d 922 (5th Cir. 1976); 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2472); *see also Cummins-Allison Corp. v. SBM Co., Ltd.*, 2009 WL 10690531, at *4 (E.D. Tex. Dec. 30, 2009) ("[T]o preserve error or get an instruction or to deal with something, an objection has to be made . . . .").  Because True Believers never objected at trial to Mr. Carter's relevant line of questioning on cross examination, True Believers has "waived any objection" it has.  *Id.*  Nonetheless, even had True Believers properly preserved this ground for its motion for new trial, the Court would still find that a new trial is not warranted.

A new trial is not warranted because Mr. Carter complied with the Court's Order on MIL No. 9 and True Believers has demonstrated no prejudice from Mr. Carter's line of questioning.  At

the Final Pretrial Conference, the Court granted True Believers' MIL No. 9 and instructed the parties to approach the bench should Russell seek to discuss: "Any evidence, question, statement, reference, or suggestion regarding arrests or criminal history of any person" (Dkt. #90).  The same instruction was given for bankruptcy history under MIL No. 11 (Dkt. #90).  Mr. Carter complied with the Court's Order.  To adequately address Mr. Carter's compliance, it does well to describe what occurred at the trial.

On cross examination, Mr. Carter directed Mr. Peoples' attention to his bankruptcy history and his trademark application history.  During Mr. Carter and Mr. Peoples' colloquy, Mr. Carter determined that there were inconsistencies in Mr. Peoples' testimony as to both his bankruptcy and trademark application histories.  Consequently, Mr. Carter requested to approach the bench. The following interaction occurred:

> MR. CARTER: Judge, my next topic I need to approach.
>
> THE COURT: Okay. If counsel will approach.
>
> (Bench conference.
>
> MR. CARTER: We have two things. One, Mr. Peoples was asked in his deposition do you have any bankruptcies.  He said I have one.  That was personal bankruptcies.  He has two, so that's false testimony.  He has two bankruptcies.  Then, two, in the first bankruptcy in 2011 his business was going in 2009, 2010, 2011, and in this bankruptcy he filed here in Sherman on July 18, 2011, he swore to two things, that he didn't have any business interests and he didn't own any intellectual property.  I should be able to impeach him on that.
>
> MR. ROSS: Your Honor has already entered a motion in limine on this one.
>
> THE COURT: That's why he's approaching the bench.
>
> MR. ROSS: I understand.  I haven't seen these bankruptcy documents.  They haven't been provided.
>
> MR. CARTER: It's for impeachment.  He filed it on July 18, 2011, and I had him painstakingly go through all the things he was doing in 2009, 2010, right up through it.  In the bankruptcy he was asked if he had any business interests or intellectual property and he swore under oath no.  I said have you ever represented to anyone that you didn't own property or trademarks prior to 2011 and he said, no, I have not.

MR. ROSS: First of all, it's a legal question, what kind of intellectual property he owns or not.  It's more of a legal question as opposed to fact.  He may have -- you know, there is a registered mark under common law rights which he may not have even realized.

THE COURT: Well, then he can explain that.  It seems like it is relevant.

MR. ROSS: May we have a few minutes to look at these?

MR. CARTER: How much time -- we don't have much time and I want to do this now.  I approached like I was supposed to and I want to do it now.

THE COURT: I understand.  Unless you give me some reason, I don't see any reason why I shouldn't allow it.

MR. CARTER: Thank you.

MR. ROSS: Can you show me the statements?

MR. CARTER: I don't have to show him.  I'll show it to him with the witness.

MR. ROSS: Thank you.

THE COURT: I'll allow it, so go ahead.

(Bench conference concluded.

THE COURT: Go ahead and proceed.

MR. CARTER: May I proceed, Your Honor?

THE COURT: Yes.

(Dkt. #136, Exhibit A).  Subsequent to the bench conference, Mr. Carter resumed his cross of Mr.

Peoples which led to the following exchanges:

*Exchange 1*

Q. And number 13 it has do you have any stock and interest in any incorporated and unincorporated businesses, doesn't it?

A. Yes.

Q. You swore under the penalty of perjury that you did not, didn't you, sir?

A. I did.

Q. You had True Believers, Inc. at that time, didn't you, sir?

A. I did.

Q. That was false, wasn't it, sir?

A. My bankruptcy --

Q. That was false, wasn't it, sir?

A. My bankruptcy attorney filled this out.

MR. CARTER: Objection.  Non-responsive, Your Honor.

THE COURT: I'll let him -- I'll overrule it.

BY MR. CARTER:

Q. That was false, wasn't it, sir?

A. According to this, yes.

Q. That was perjury, wasn't it, sir?

A. According to this, yes.

(Dkt. #136, Exhibit A).

*Exchange 2*

Q. And on the next page under none, it says under number 22 if you have any patents, copyrights or other intellectual property.  Do you see that, sir?

A. Yes.

Q. You were claiming trademarks since 2009, weren't you, sir?

A. No. 2012.

Q. 2009 is what you testified to here today, sir.

A. 2012 is when True Believers Ink 2 was registered.

Q. Are you claiming --

A. 2009 to 2011 True Believers, Inc. as a sole proprietor it was.

Q. And it had those trademarks that you're suing us on now, am I right?

A. Trademarks were done in 2012.

Q. Are you telling this jury now that you didn't have trademark rights in 2009, 2010, 2011?

A. I had -- yes, the ownership but not the registered mark is what I was getting at.

Q. That's what I'm saying.

A. Yes, yes.

Q. You were claiming ownership rights and trademarks in 2009, 2010, 2011, is that right?

A. Yes.

Q. But you said you had no ownership rights here, didn't you, sir?

A. Yes.

Q. That was false as well, wasn't it?

A. Yes.

Q. That was perjury as well, wasn't it, sir?

A. Yes.

(Dkt. #136, Exhibit A).

*Exchange 3*

Q. Okay.  Now, yesterday we talked ad nauseam about the fact that you represented to the Trademark Office in your application in January of 2018 for the word True Believers that the first use, you swore under oath, was December 1st, 2013 of the word mark.  Do you remember we saw that yesterday?
A. Yeah, and I believe you misspoke on that, because it said as early as.  You didn't finish it.  As early as.

Q. First use.

A. First use, but it said as early as.

Q. Yes.

A. I believe that's what it says.

 . . .

Q. Do you recall signing a declaration or an affidavit in this court on or about July 31st, 2019, less than two months ago?

A. I believe so, yes.

Q. Okay.  And you swore to that declaration, didn't you?

A. Well, what declaration?

MR. CARTER: Can I approach the witness and show him this real quick, Your Honor?

THE COURT: Yes.

(Mr. Carter approaches the witness.

THE WITNESS: Yes.

BY MR. CARTER:

Q. Thank you.  Okay.  And when you swore to this declaration, where were you when you swore to it?  Were you in your attorney's office?

A. Yes.

Q. Did your attorney draft this document, this declaration, this affidavit?

A. Yes.

Q. Okay.  And you signed and agreed that everything was true and correct, didn't you?

A. Yes.

Q. Okay.  And in this declaration dated July 31st, 2019, you state: I, nonetheless, declare that TBI has used the True Believers cross mark and the True Believers word mark in interstate commerce since at least March of 2012 and the True Believers circle mark in interstate commerce since at least December 2013.  I declare under the penalty of perjury that the foregoing is true and correct, executed on this 31st day of July, 2019, in Dallas, Texas.  Is that correct?

A. Yes.

Q. Now, one of those is false.  Either the declaration, the sworn affidavit that you filed with the PTO in January of 2018 and said the first use was December 1st, 2013, or here where it states that the first use was at least March 2012.  One of those is perjury, sir.  Which one is it?

A. The True Believers cross mark was first used in commerce as a company March 2012. The circle mark was 2013.

Q. It says True Believers word mark as well.  Do you see that?  You skipped that one.  Do you see it?

A. I'm looking at True Believers cross mark, and you're talking about the word mark.

Q. Okay.

A. Yes, I see it. I see it, yes.

Q. So is that false?

A. No, because I had been using the word mark True Believers.

Q. So it was false what you told the Trademark Office in January of 2018?  That was false what you told the Trademark Office?

A. No. I think it was just something my attorneys had drafted in the -- while they were drafting it and it was -- at that point it was correct, so --

Q. One of those is false and one of those is perjury, Mr. Peoples.  Which one is it?

A. I'm only going off what my counsel drafted for me to sign.

Q. Was it March 2012 or was it December 2013, Mr. Peoples?

A. I am going off of what my attorneys drafted and I signed.

(Dkt. #136, Exhibit B).

21

As evidenced by the foregoing, Mr. Carter complied with MIL No. 9 and MIL No. 11 by approaching the Court prior to questioning Mr. Peoples on any inconsistencies that might constitute criminal activity—i.e., perjury—or concern any bankruptcy proceedings.  To be sure, when True Believers asserted that the Court's *in limine* Order prevented such questioning, the Court instructed True Believers that it was the very reason that the Courts *in limine* Order existed that Mr. Carter was approaching the bench.  Further, the Court afforded True Believers the opportunity to argue why Mr. Carter should not be permitted to cross Mr. Peoples on the purported inconsistencies in Mr. Peoples' bankruptcy and trademark histories when it stated: "Unless *you give me some reason*, I don't see any reason why I shouldn't allow it."  (Dkt. #136, Exhibit A). The Court made it abundantly clear from the outset that its decision to grant MIL No. 9 and MIL No. 11 was not a final decision.  The Court stated that despite the Court's initial ruling, a bench conference could result in relevant evidence or testimony entering the proceedings.  Mr. Carter fully complied with the Court's Order and requested a bench conference before crossing Mr. Peoples on any matters covered by MIL Nos. 9 or 11.  And True Believers failed to proffer an adequate response to prevent the relevant line of impeachment.  Consequently, it was within the Court's discretion to permit the disputed line of questioning.  The Court, after hearing argument from counsel, chose to permit said line of questioning.  As such, no violation of the Court's Order occurred.

Not only did Mr. Carter not violate the Court's *in limine* Order, but True Believers also failed to establish that Mr. Carter's cross examination of Mr. Peoples was prejudicial.  Under Fifth Circuit precedent, "[i]t is well established that a motion for new trial based upon inflammatory remarks is addressed to the sound discretion of the trial judge, and his ruling thereon will not be disturbed absent an abuse of that discretion."  *Meyers v. Moody*, 693 F.3d 1196, 1220–21 (5th Cir.

1982).   Indeed, "[t]he trial court is in a superior position to gauge the prejudicial impact of counsel's conduct."  *All Freight Systems v. James*, 115 F. App'x 182, 187 (5th Cir. 2004) (citing *Anheuser–Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995)).  "A new trial is warranted on the ground of attorney misconduct during the trial where the 'flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'"  *Id.* (citing *Anheuser–Busch*, 69 F.3d at 346).  Therefore, "[t]o warrant a new trial, improper comments by counsel must impair substantial rights and cast doubt on the verdict."  *Id.* (citing *Bufford v. Rowan Co.*, 994 F.2d 155, 157 (5th Cir. 1993)).  "The conduct must be such as gravely to impair the jury's calm and dispassionate consideration of the case."  *Id.* at 187–88 (citing *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985)).

It is axiomatic that all evidence is prejudicial in one form or another to the party that the evidence is introduced against.  To be sure, Federal Rule of Evidence 403, which is utilized by courts to exclude otherwise relevant evidence, recognizes the inherent prejudice that each piece of evidence includes and asks courts to weigh that prejudice against the evidence's probative value.  What is more, Rule 403 does not prohibit prejudicial evidence, it prohibits evidence which is *unfairly* prejudicial.  *See* FED. R. EVID. 403.  To succeed on its Motion for New Trial, True Believers must establish that Mr. Carter's cross examination of Mr. People's "impair[ed] substantial rights [of Mr. Peoples'] and cast doubt on the verdict."  *James*, 115 F. App'x at 187.  In other words, True Believers must demonstrate the "prejudicial impact of counsel's conduct" on the jury.  *Id.*  While Rule 403 is not directly implicated here, the basic tenet of law that underlies Rule 403, and a motion for new trial, nonetheless guides the Court: any statement or evidence may be prejudicial, it is only that which unfairly affects the trial by impairing "the jury's calm and

dispassionate consideration of the case" that must be ferreted out.  Here, True Believers has not established that Mr. Carter's actions amounted to that form of influence.

True Believers claims that "an accusation of perjury, particularly a groundless accusation of perjury, in front of the jury is obviously highly prejudicial to the credibility of any witness" (Dkt. #136).  Despite claiming that the use of the term "perjury" "obviously" prejudices the jury, True Believers provides the Court with no legal authority in support of its position.  Moreover, True Believers provides the Court with no support for its conclusion that Mr. Carter's use of the term "perjury" affected the verdict.  This lack of briefing is enough for the Court to deny True Believers' Motion as it has not demonstrated, factually or legally, that Mr. Carter's line of questioning influenced the jury.  *James*, 115 F. App'x at 187.  Nonetheless, the Court finds that, in reviewing the evidence itself, Mr. Carter's line of questioning did not impair the jury.

Credibility determinations are matters left to the jury.  *See United States v. Owens*, 509 F. App'x 363, 365 (5th Cir. 2013) (citing *United States v. Zuniga*, 18 F.3d 1254, 1260 (5th Cir. 1994)); *see also Gibraltar Savings*, 860 F.2d at 1297 ("[D]etermining the relative credibility of the witnesses [is] the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict.").  True Believers argues that Mr. Carter's "accusations" impermissibly harmed Mr. Peoples credibility and thus a new trial is warranted.  The Court disagrees.  Mr. Carter's use of the term "perjury" was only one aspect that could have harmed Mr. Peoples' credibility.  Mr. Peoples admitted falsehoods throughout the trial.  These falsehoods included misinformation related to his prior businesses, resume, statements in his trademark application, and bankruptcy proceedings.  *See* Dkt. #138, Exhibit 2 at pp. 3:16–18; 39:25–40; 73:23–25; 74:11–12; 76: 4–5; 109:14–17; 116: 7–8; 117: 13–14.  Further, all of these falsehoods were admitted to prior to Mr. Carter's use of the term perjury:

*Exchange 1*

> BY MR. CARTER:
>
> Q. That was false, wasn't it, sir?
>
> A. According to this, yes.
>
> Q. That was perjury, wasn't it, sir?
>
> A. According to this, yes.

(Dkt. #136, Exhibit A).

*Exchange 2*

> Q. That was false as well, wasn't it?
>
> A. Yes.
>
> Q. That was perjury as well, wasn't it, sir?
>
> A. Yes.

(Dkt. #136, Exhibit A).

*Exchange 3*

> Q. One of those is false and one of those is perjury, Mr. Peoples.  Which one is it?
>
> A. I'm only going off what my counsel drafted for me to sign.

(Dkt. #136, Exhibit B).  In addition to these admitted falsehoods, Mr. Peoples consistently refused to answer yes or no questions and repeatedly responded with statements akin to: "I'm only going off what my counsel drafted for me to sign."  Dkt. #136, Exhibit B at p. 24:15–18.  While the jury may have heard the term "perjury," the jury also heard a plethora of admitted falsehoods and evasive answers.  Any adverse inferences drawn from Mr. Peoples' testimony was surely not grounded solely in Mr. Carter's use of the term "perjury."  To be sure, competent and substantial evidence could support any credibility determination the jury made absent the use of the term perjury.  *See Gibraltar Savings*, 860 F.2d at 1297.  Consequently, the Court finds that True Believers cannot show that the use of said term permeated the entire proceeding such that it

improperly influenced the jury.  *See James*, 115 F. App'x at 187.  True Believers' Motion for New Trial is accordingly denied.

II.     Defendant Russell Brands, LLC's Motion for Award of Attorneys' Fees

Russell asserts that it is entitled to attorneys' fees against True Believers under 15 U.S.C. § 1117(a) because True Believers brought substantively weak claims and litigated in an unreasonable manner.  Russell also claims that it is entitled to attorney's fees against Mr. Ross under 28 U.S.C. § 1927 because Mr. Ross, True Believers' lead counsel, filed and pursued substantively weak claims on behalf of True Believers and litigated the matter in an unreasonable and vexatious manner.  True Believers and Mr. Ross oppose the sought-after relief.  For the reasons discussed below, the Court agrees with True Believers and Mr. Ross.[5]

A.     True Believers – 15 U.S.C. § 1117(a)

Pursuant to 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  A prevailing party has been defined as "'a party in whose favor judgment is rendered' or 'one who has been awarded some relief by the court.'"  *All. for Good Gov. v. Coal. for Better Gov.*, 919 F.3d 291, 296 n.16 (5th Cir. 2019) (citing *Kiva Kitchen & Bath Inc. v. Capital Distrib., Inc.*, 319 F. App'x 316, 322 (5th Cir. 2009)).  A case is "exceptional" where: "(1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'"  *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014)).  Whether a case is "exceptional" is committed to the sound discretion

---

[5] The Court notes that True Believers asserts that Russell's Motion is defective because it fails to state the amount of attorneys' fees sought or provide a fair estimate of those fees.  The Court need not address this argument, however, because it finds that even if Russell had provided such information, Russell would still not be entitled to attorneys' fees.

26

of the district court and is measured on a "case-by-case" basis under the totality of the circumstances. *Id.* (citing *Octane Fitness*, 572 U.S. at 555); *see also Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (stating that an award of attorneys' fees "in patent cases should be reserved for rare and unusual circumstances"). The movant must prove the exceptional nature of a case by a preponderance of the evidence. *Id.* at 624.

    This is not an exceptional case under either of Russell's arguments. First, Russell claims that this was a clear-cut case predicated upon meritless claims. In support of this argument, Russell cites, among other things, its status as the prevailing party and the fact that the jury returned a unanimous verdict, on all claims, after approximately three hours of deliberations. While both statements are true, Russell tellingly leaves out that its Motion for Partial Summary Judgment on Liability (Dkt. #33) and its Motion for Partial Summary Judgment on Damages (Dkt. #34) were summarily denied due to genuine issues of material fact.[6] And, if that is not enough, Russell initially filed counterclaims, that were later voluntarily dismissed, alleging that it was in fact True Believers who had infringed Russell's asserted "TRUE BELIEVERS" trademarks. This suggests that Russell "did not always view [True Believers'] infringement position as frivolous." *See Stragent*, 2014 WL 6756304, at * 5. The Court is accordingly unpersuaded by Russell's argument that True Believers' claims were so substantively weak that they merit an award of attorneys' fees under the "exceptional" clause of 15 U.S.C. § 1117(a). *See id.* ("Every case will have a loser. To show that the case is 'exceptional' under § 285, Intel must show that it "stands out from others.").[7] True Believers may have proffered "losing arguments, but they were not frivolous [arguments]." *Id.*

_____

[6] In other words, while True Believers' presented a weak case at trial, prior to trial, True Believers' claims seemingly had more merit.
[7] "Like the Patent Act, the Lanham Act's text establishes a flexible standard for whether a case is 'exceptional.'" *Baker*, 821 F.3d at 623.

Russell also claims that this case was litigated in an unreasonable manner such that Russell is now entitled to attorneys' fees.  Again, the Court disagrees.  Russell points to what it has characterized as, among other things: (1) unreasonable interactions surrounding Russell's counterclaims; (2) True Believers' filing of a premature motion to compel, a hyper-technical motion to strike, and a deficient response to Russell's Motion for Summary Judgment; and (3) True Believers' violation of Federal Rule of Civil Procedure 26(a)(1)(A)(iii).  True Believers responds with justifications for each of its actions.  At the outset, the Court finds it necessary to note that, as to the counterclaims dispute, True Believers' conduct was neither unreasonable nor vexatious.  True Believers came to the strategic conclusion that Russell's counterclaims served a useful purpose in litigating this action: namely, True Believers determined that Russell's counterclaims were judicial admissions that would bolster True Believers' case.  While the Court held that "True Believers was mistaken in its interpretation of what constitutes a 'judicial admission,'" as the counterclaims did not amount to judicial admissions, the Court did not find True Believers to have acted unreasonably in coming to its flawed interpretation.  Russell has proffered no authority that supports an award of attorneys' fees against a party for a mistaken legal interpretation or conclusion.  To order attorneys' fees predicated upon such a mistake would be a poor precedent to set that would permit courts to punish future litigants for advancing arguments that are not infallible.  The Court declines to begin awarding fees predicated upon such grounds today.  Thus, while the Court necessarily considers the entirety of this action under the totality of the circumstances, the Court declines to consider True Believers' actions, with respect to Russell's counterclaims, as unreasonable.

With the counterclaims dispute addressed, the Court, in its discretion, finds that Russell has not carried its burden in showing that it is entitled to attorneys' fees under the totality of the

28

circumstances.  *See DeShong*, 821 F.3d at 625.  Attorneys' fees in patent cases should be "reserved for rare and unusual circumstances."  *See Stragent*, 2014 WL 6756304, at *3.  Those "rare and unusual circumstances" are not present here; or, at the very least, Russell has not carried its burden in demonstrating that such circumstances are present.  *See DeShong*, 821 F.3d at 625.  To be sure, Russell's briefing as to this matter is grounded in an enumeration of what it finds to be disagreeable conduct.  Little argument, however, is provided to demonstrate that True Believers' conduct should be elevated from the category of adversarial to the category of "exceptional."  *See Baker*, 821 F.3d at 624.  Further, Russell does little to refute True Believers' Response which proffers tenable explanations for the conduct Russell relies upon in support of its Motion.  Such explanations include, among other things, strategic decisions to not oppose certain motions while opposing others, a calculation of treble damages, and a misunderstanding of the scope of Court instructions. While the Court is not blessing True Believers' actions in any regard, the Court finds it necessary to distinguish between questionable conduct and exceptional conduct.  Without more, the Court finds that it would be inappropriate to award Russell attorneys' fees against True Believers.

B.  Steven E. Ross – 28 U.S.C. § 1927

Under 28 U.S.C. § 1927:

> any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

To award attorneys' fees under § 1927, a court must find "evidence of bad faith, improper motive or reckless disregard of the duty owed to the Court."  *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (citation omitted).  The phrase "unreasonably and vexatiously" is described as:

> [C]onduct that, when viewed under an objective standard, is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense, or position that is or should be known by a lawyer to be unwarranted in fact or law or is advanced for the primary purpose of obstructing the orderly process of the litigation.

*Western Fidelity, et. al. v. Bishop*, 2001 WL 34664165, at *22 (N.D. Tex. June 26, 2001).

According to the Fifth Circuit, "punishment under § 1927 is 'sparingly applied.'" *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 872 (5th Cir. 2014) (citing *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996). Punishment is "sparingly applied" because sanctions under § 1927 are "'punitive in nature and require clear and convincing evidence' that sanctions are justified." *Id.* (citing *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010)). Indeed, should a court find that sanctions are warranted under § 1927, the court must then "make detailed factual findings" supporting its conclusion. *Id.* at 871 (citing *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 180 (5th Cir. 2007)).

Russell proffers two arguments in support of its request for attorneys' fees against Mr. Ross under § 1927. First, Russell argues that Mr. Ross should be sanctioned for maintaining substantively weak claims. Second, Russell argues that Mr. Ross conducted this litigation in an unreasonable and vexatious manner. As to Russell's first argument, as the Court explained and concluded in Part II(A), *supra*, the claims in this action were not so substantively weak that they merit an award of attorneys' fees. Therefore, the Court finds Russell's first argument against Mr. Ross lacking.

Like Russell's first argument, Russell's second argument also fails to carry the day. Russell claims that "Mr. Ross's self-evident motive was to use [True Believers'] weak claims as a cudgel in the hopes of extorting a settlement from Russell" (Dkt. #134). Russell further alleges that Mr. Ross's conduct was an attempt "to intimidate Russell" (Dkt. #134). To support these accusations, Russell again cites to Mr. Ross's motion practice and late damages disclosure that the

30

Court discussed in Part II(A), *supra*.  As the Court discussed, Mr. Ross has presented the Court with tenable explanations for each action he undertook.  Consequently, the Court is not persuaded that Mr. Ross was acting with bad faith, an improper motive, or the reckless disregard necessary for sanctions.  *See Edwards*, 153 F.3d at 246.  Claiming that an attorney was motivated by a desire to extort, intimidate, or bludgeon opposing counsel into submission is a hefty accusation to make; and while Russell and True Believers may have had their disagreements, the facts of this case simply do not support such an assertion.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for New Trial (Dkt. #136) is hereby **DENIED**.

It is further **ORDERED** that Defendant Russell Brands, LLC's Motion for Award of Attorneys' Fees (Dkt. #134) is hereby **DENIED**.

**SIGNED this 4th day of May, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE